FILED

vG

FEB 18 2009

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                              ) Case No. 07-10440-B-7
                                                   )
Ashish J. Biswas and                               )
Shirley Biswas,                                    )
                                                   )
                      Debtors.                     )
_____                )
                                                   ) Adversary Proc. No. 07-1097
Yadvinder Narang and                               )
Raushani Narang,                                   )
                                                   )
                      Plaintiffs,                  )
                                                   )
            v.                                     )
                                                   )
Ashish Biswas, dba Biswas                          )
Construction Company,                              )
                                                   )
                      Defendant.                   )
_____                )

**MEMORANDUM DECISION REGARDING COMPLAINT TO
DETERMINE DISCHARGEABILITY OF DEBT**

**This memorandum decision is not approved for publication and may not be cited
except when relevant under the doctrine of law of the case or the rules of res
judicata and claim preclusion.**

Robert H. Brumfield, III, Esq., appeared on behalf of plaintiffs, Yadvinder Narang, M.D.
("Dr. Narang") and Raushani Narang (collectively, the "Narangs").

David A. Jenkins, Esq., appeared on behalf of the debtor, Ashish Biswas ("Biswas").

A trial in this adversary proceeding was held before the court. Prior to this

bankruptcy, the Narangs contracted with Biswas to build their custom home. They

suffered significant economic damages as a result of Biswas' failure to competently and

70

timely perform under the contract. The Narangs subsequently received a state court judgment for their damages in the amount of $519,441.27 (the "State Court Judgement").[1] In this adversary proceeding they object to the discharge of that obligation. For the reasons set forth below, judgement will be entered in favor of Biswas.

This memorandum contains findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523 and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §157(b)(2)(I).[2]

**Background and Facts.**

In 2003, Ashish Biswas, doing business as Biswas Construction Company, contracted with the Narangs to act as the general contractor in the construction of their home (the "Construction Contract"). Biswas was recommended by friends of the Narangs who themselves were planning to hire Biswas to build a house. The Narangs already had a plan for their house prepared by an architect and Biswas' bid of $986,080 was the lowest by a significant amount.[3]

The Construction Contract specified that Biswas would supply all work, labor and services and furnish all the materials necessary to complete construction of the house.

---

[1]The State Court Judgement was entered after an unopposed motion for summary judgement.

[2]Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated on or *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[3]Dr. Narang testified that Biswas' initial bid was $100,000 lower than the next competing bid. Biswas' original contract amount was $986,080, but during the course of construction change orders increased the contract amount by $78,905, for a revised total price of $1,064,985.

2

The Construct Contract specified that all work was to be completed in compliance with applicable building codes and laws and would be completed within a reasonable time. The Construction Contract acknowledged that a contractor is required by the laws of the State of California to be licensed through the State Contractor's Licensing Board.[4]

Biswas told Dr. Narang that he had built some houses in the Fresno area, and a temple in Bakersfield. There was no evidence to suggest that these statements were not true. Dr. Narang was familiar with the temple in Bakersfield. Dr. Narang did not inquire further into Biswas' experience with residential construction, nor did he ask Biswas whether he held a valid contractor's license. Prior to forming Biswas Construction, Biswas' experience was in the commercial context and in residential remodels and additions. The house designed for the Narangs was close to 7,000 square feet in size and consisted of two stories and a basement. The Narangs' house was the largest residential project Biswas had undertaken, and the first with a basement.

At the time Biswas entered into the Construction Contract, he did hold a valid contractor's license. Biswas testified that his license was suspended in June 2004 because he had not renewed the license bond. Biswas believed that the bond would be up for renewal at the same time as his license in December 2004. Because he was moving, Biswas lost track of some mail and did not realize that his license had been suspended until it was time to renew it. Biswas obtained a new bond and his license was reinstated within a few weeks. Biswas did not inform the Narangs that his license had been suspended.

The Narangs obtained a construction loan from Bank of America. These funds were disbursed to Biswas based upon the percentage of work completed after an inspection by a representative of the bank. Between July 1, 2003, and October 22, 2004, Biswas received draws which totaled 80% of the available funds. The progress of

---

[4]The parties stipulated to many of the material facts based on discovery that was conducted in the state court litigation.

3

1  construction was slow and subject to excessive delays.  Biswas failed to pay some
2  subcontractors and materials suppliers.  On February 7 and 8, 2005, when the house was
3  only 50% complete, and while the house had water damage and mold issues, Biswas
4  requested two additional draws.  On February 18, 2005, the Narangs notified Biswas that
5  he was to cease and desist his work on the house.  On February 25, 2005, the Narangs
6  hired an inspection company which concluded that the house was not near completion.

7      Biswas admits that some of the construction delays were his fault because he did
8  not properly organize the project.  Biswas subsequently stipulated, in the state court
9  litigation, that he did not have the experience or competence to take on the Narangs'
10  project, as evident from the manner in which he ran the project.  Biswas' performance
11  was not in conformity with the industry standards.  There were numerous defects
12  throughout the house.  The house needed substantial remedial and corrective work, at a
13  cost of $299,313.27, in order to bring it up to applicable building codes.  Much of
14  Biswas' construction was of a substandard nature.

15  **Issues.**

16      The State Court Judgement was based on two claims.  The first claim was for
17  damages in the amount of $299,313.27, which the Narangs paid to the contractor they
18  hired to repair and complete the house.  The second claim was for disgorgement of
19  $220,128, which was paid to Biswas at a time when his contractor's license was under
20  suspension.  The Narangs contend that both of these obligations are nondischargeable.

21      The two issues before the court are: (1) does Biswas' representation that he was
22  competent to build the Narang's house, in light of his subsequent performance, make his
23  debt to the Narangs nondischargeable under § 523(a)(2)(A) or § 523(a)(6), and (2) does
24  the temporary suspension of Biswas' contractor's license during the course of
25  construction, and his failure to notify the Narangs when it was suspended, make his debt
26  nondischargeable under § 523(a)(2)(A) or § 523(a)(6)?
27  ///
28  ///

4

**Legal Analysis.**

 **Section 523(a)(2)(A).**

The Narangs allege that Biswas "fraudulently represented that he was qualified to competently construct [Narang's] home" pursuant to 11 U.S.C. § 523(a)(2)(A). The Narangs allege that Biswas represented that he was competent to act as the general contractor for the construction of their house, that he was not so competent, *that he knew* he was not competent, and that they relied on his representations to their detriment.

Section 523(a)(2)(A) excepts from discharge any debt for money, property, services . . . to the extent obtained by false pretenses, a false representation, or actual fraud. A creditor must establish five elements by a preponderance of the evidence in order to establish that a debt is nondischargeable under § 523(a)(2)(A):

 1. Misrepresentation, fraudulent omission or deceptive conduct by the debtor;

 2. Knowledge of the falsity or deceptiveness of his statement or conduct;

 3. An intent to deceive;

 4. Justifiable reliance by the creditor on the debtor's statement or conduct; and

 5. Damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

"To be actionable, the debtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *In re Shallow,* 393 B.R. 277, 286 (Bankr. D. Conn. 2008) (citations omitted).

Stipulations of facts submitted to the court establish the following elements: (1) Biswas represented that he had the ability to undertake the Narangs' project, (2) that representation was false, (3) the Narangs justifiably relied upon that representation, and (4) the Narangs suffered damages. The only missing elements are the second and third, *Biswas' knowledge that he was not competent and his intent to deceive the Narangs.* The Narangs had to present evidence to show that at the time Biswas entered into the

5

1  Construction Contract, he possessed the subjective knowledge that he could not, in fact,

2  competently build the Narangs' house.  The Narangs failed to produce any evidence to

3  support a finding that Biswas subjectively knew that he was not competent to build the

4  house.[5]

5         Indeed, it is more likely than not that Biswas actually believed he could build the

6  house.  The high opinion of his ability was not without some foundation.  He was a

7  licensed general contractor, had some prior experience in residential construction,

8  substantial experience in commercial construction, the house was fully designed by a

9  professional architect, and much of the work was performed by specialized sub-

10  contractors.  The fact that Biswas overestimated his own ability does not mean that he

11  knowingly lied.  "Mere 'puffing' in the negotiation of a construction contract does not

12  rise to the level of fraud." *Bhambri v. Allied Enterprises, LLC, et al. (In re Geiler)*, 398

13  B.R. 661, 671 (Bankr. E.D. Mo. 2008).  California law has long recognized the

14  distinction between actionable fraud and non-actionable "puffing," or exaggerated

15  expressions of opinion upon which the purchaser will rely at his peril.  *See Lee v.*

16  *McClelland*, 120 Cal. 147, 149, 52 P. 300 (1898).  Here, the Narangs could have easily

17  asked Biswas for references, prior examples of his work, to satisfy themselves of his

18  ability, but they proceeded without doing so, relying largely on the recommendation of a

19  friend.  In the absence of some evidence that Biswas knowingly lied to the Narangs, the

20  court cannot find that Biswas committed fraud within the meaning of § 523(a)(2)(A).

21         The Narangs cite *McCain v. Fuselier (In re Fuselier)*, 211 B.R. 540 (Bankr. W.D.

22  La. 1997), where the court found a builder's debt to the homeowners to be

23  nondischargable.  However, *Fuselier* is distinguishable from the case at hand on virtually

24

25  _____

26  [5]In the state court summary judgement motion, the plaintiffs' separate statement of undisputed facts contained statements alleging Biswas' knowledge, however no evidence was cited to support those statements.  In fact, no evidence was submitted that supported a finding that Biswas considered himself not competent to undertake the Narang's project.

27

28

6

every material point. In *Fuselier*, the debtor's actions were blatantly fraudulent. The debtor, who had never been licensed in Louisiana, accepted a project to construct a residence for the homeowner. He obtained the written proposal from the construction company for which he worked, but then retyped the proposal, substituting his name as the contractor and using the construction company's license number on the contract without permission. At one point during construction, the debtor obtained funds from the homeowner by falsely representing that money was needed for material which had already been delivered and used in the construction. The debtor actually used the money for unrelated purposes. In addition, the debtor's failure to pay subcontractors resulted in construction liens being filed against the house which had to be satisfied by the homeowners.

In *Fuselier*, the court found that the debtor had made representations of fact which he *knew were false at the time,* with the *purpose of deceiving* the homeowner. In the case at hand, the Narangs contend that Biswas *"should have* known that he did not have the requisite qualifications, skills and qualifications" to construct their house, but they have not produced evidence to show that he, in fact, *did know* of his inability. The Narangs have not proven each of the § 523(a)(2)(A) elements of fraud.[6]

### California Business and Professions Code Sections 7131(b) and 7160.

The Narangs also contend, as part of the fraud, that Biswas represented that "he would maintain a contractor's license during the course of construction." It was stipulated that Biswas' contractor's license was suspended from June 2, 2004, to February 7, 2005. This argument requires an examination of California Business and Professions

---

[6]Other authorities cited by the Narangs do not support their claim of nondischargeability, including *Southtrust Bank of Alabama v. Moody (In re Moody)*, 203 B.R. 771 (Bankr. M.D. Fla. 1996), a credit card case. Incidently, the Narangs contend that Biswas' reliance on *Anastas v. American Savings Bank (In re Anastas)*, 94 F.3d 1280 (9th Cir. 1996) is inapplicable *because* it is a credit card case.

1   Code sections 7160[7] and 7131(b).[8]

2          The case, *Ghomeshi v. Sabban (In re Sabban)*, 384 B.R. 1 (9th Cir. BAP 2008),

3   illustrates how these provisions of the Business and Professions Code relate to issues of

4   dischargeability in bankruptcy. In that case, an unlicensed contractor and homeowner

5   entered into a home improvement contract. The contractor held himself out as being

6   licensed and the homeowner relied on that representation. After problems developed

7   between the parties, the homeowner sued for breach of contract, fraud, and violation of

8   § 7160. Eventually the trial was held on the § 7160 allegations only. The state court

9   awarded the homeowner statutory damages of $500, plus attorneys' fees under the code

10  section, but held that the homeowner had not been damaged under § 7160; the entire

11  amount of $123,000 paid by the homeowner had been expended on the homeowner's

12  project. The state court did award $123,000 to the homeowner "in the nature of

13  disgorgement" pursuant to § 7031(b).

14         The BAP affirmed the decision of the bankruptcy court, that the judgement for

15  disgorgement was dischargeable in the contractor's bankruptcy. The court stated:

16  "§ 7031(b) is a 'regulatory statute about status' and 'not a tort statute about misconduct.'"

17  The BAP noted that the bankruptcy court agreed with the state court, that the $123,000

18  award did not stem from the contractor's fraud or misrepresentation. In the case at hand,

19  Biswas was licensed at the time the Narangs entered into the Construction Contract so it

20  is not clear that Business and Professions Code § 7160 even applies to these facts.

21

22  _____

23  [7]California Business and Professions Code section 7160 provides: "Any person who is
    induced to contract for a work of improvement . . . in reliance on false or fraudulent

24  representations or false statements *knowingly made*, may sue and recover from such contractor . .
    . a penalty of five hundred dollars ($500), plus reasonable attorney's fees, in addition to any

25  damages sustained by him by reason of such statements or representations made by the contractor

26  . . . ." (Emphasis added.)

27         [8]California Business and Professions Code section 7031 prohibits a contractor who is not
    in compliance with the licensing requirements from bringing an action for payment or enforcing

28  a security agreement to secure payment.

1    Further, no evidence has been presented that Biswas used the Narangs' funds for any

2    purpose other than in furtherance of the Construction Contract.

3         The Narangs also cite the *Fuselier* case to support their contention that the

4    judgement for disgorgement is nondischargable because of the temporary lapse of

5    Biswas' contractor's license. *Fuselier,* was distinguished in *In re Sabban*, 384 B.R. at 7,

6    n.8, where that court explained:

7              Courts have excepted debts from discharge where the debtor
               has misrepresented the status of his or her professional
8              license, *but only to the extent the creditors were actually
               injured because of the misrepresentations. See Sinha v. Clark
9              (In re Clark)*, 330 B.R. 702 (Bankr.C.D.Ill.2005) (applying
               section 523(a)(2)(A) to except from discharge amounts paid
10             by homeowners to correct construction defects caused by
               contractor who had misrepresented his licensing status, but
11             granting discharge to other portions of state court judgment
               against debtor/contractor); *McCain v. Fuselier (In re
12             Fuselier)*, 211 B.R. 540 (Bankr.W.D.La.1997) (finding that
               creditors suffered damages from debtor's substandard work in
13             constructing home and that creditors would not have hired
               debtor but for his misrepresentations as to his licensing status
14             and expertise, court excepted damages from discharge under
               section 523(a)(2)(A)); *McDaniel v. Border (In re McDaniel)*,
15             181 B.R. 883 (Bankr.S.D.Tex.1994) (excepting from
               discharge damages arising from defects in architectural work
16             where architect had misrepresented the status of his license).
               *Id*. (emphasis added).

17

18        The *Sabben* court distinguished other court decisions by pointing out that the

19   judgement awarded against the debtor did not "'arise from' Debtor's fraud." *In re*

20   *Sabban*, 384 B.R. at 7. "Unlike here, none of these courts found an absence of actual

21   damage to the creditor as a result of the debtor's fraud. None of these cases involved

22   statutory disgorgement of compensation paid to an unlicensed contractor notwithstanding

23   the absence of actual injury or the absence of fraud." *Id*. In the case at hand, there was

24   no evidence that the Narangs suffered actual injury as a consequence of the lapse of

25   Biswas' license.

26        **Section 523(a)(6).**

27        The Narangs contend that Biswas' conduct was "willful and malicious" and ask

28   the court to determine that the State Court Judgement is nondischargeable under

9

§ 523(a)(6).  Section 523(a)(6) provides that a debt is excepted from discharge where it results from "willful and malicious injury by the debtor to another entity or to the property of another entity."  In 1998, the United States Supreme Court decided *Kawaauhau v. Geiger*, 523 U.S. 57 (1998),  resolving a conflict among the circuits about the requirements for a debt to be nondischargeable under Bankruptcy Code § 523(a)(6).  A doctor treated his patient's foot injury with oral penicillin, though he knew that intravenous penicillin would have been more effective.  He then left on a business trip. While he was absent, other physicians transferred the patient to an infectious disease specialist, which transfer the doctor cancelled upon his returned.  He also discontinued all antibiotics.  The patient's condition worsened and eventually her leg was amputated below the knee.  She received a malpractice judgment against the doctor, who then filed a chapter 7 case.  In the patient's § 523(a)(6) complaint, the bankruptcy court held the debt was nondischargeable; the district court affirmed; and the Eighth Circuit reversed.  The Eighth Circuit held that the exemption from discharge of § 523(a)(6) "is confined to debts based on what the law has for generations called an intentional tort."  *Id*. at 59 (citations and internal quotations omitted).

Upon appeal, the Supreme Court phrased the issue as follows: "Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury . . ., or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)?"  *Id.* at 63.  In affirming the Eighth Circuit decision, the court noted that the word "willful" in § 523(a)(6) modifies the word "injury."  In order to be nondischargeable, there must be a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.  The court concluded, "[w]e hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."  *Id.* at 63.

After Supreme Court ruling in *Kawaauhau*, lower courts and appellate courts have endeavored to apply it in particular circumstances.  The Fifth Circuit Court of Appeals, in *Miller v. J.D. Abrams, Inc. (Matter of Miller)*, 156 F.3d 598 (5th Cir. 1998), held that a employer with a million-dollar judgment against a former employee who had

10

1    misappropriated proprietary information could not prevail in its § 523(a)(6) complaint for

2    exception to discharge in the former employee's chapter 7 case. The court said that, first,

3    "willful" cannot mean negligence or recklessness. *Id.* at 603. Either objective substantial

4    certainty of harm, or subjective motive to harm, meets the Supreme Court's definition of

5    "willful . . . injury" in section 523(a)(6). *Id.* at 603.

6         In a Sixth Circuit Court of Appeals case, *Markowitz v. Campbell (In re*

7    *Markowitz)*, 190 F.3d 455 (6ᵗʰ Cir. 1999), a former client obtained a malpractice award

8    for $300,000 against her attorney, Markowitz. Markowitz filed a chapter 7 bankruptcy

9    and the former client filed a complaint to except the award from discharge. The Sixth

10   Circuit held, "from the Court's language and analysis in *Geiger*, we now hold that unless

11   the actor desires to cause consequences of his act or believes that the consequences are

12   substantially certain to result from it . . . he has not committed a willful and malicious

13   injury as defined under section 523(a)(6)." *Id.* at 464 (citations and internal quotations

14   omitted).

15        The Ninth Circuit Bankruptcy Appellate Panel addressed the *Geiger* issue in

16   *Baldwin v. Kilpatrick (In re Baldwin)*, 245 B.R. 131 (9ᵗʰ Cir. BAP 2000). There,

17   Kilpatrick received a state court judgment against Baldwin and others for assault and

18   battery. After Baldwin filed chapter 7, Kilpatrick filed a complaint under § 523(a)(6).

19   Following *Geiger*, which had overruled the previous Ninth Circuit standard, the Ninth

20   Circuit BAP adopted the Fifth Circuit's standard from the *Miller* decision, that either

21   objective substantial certainty or subjective motive meets the Supreme Court's definition

22   of willful and malicious injury in § 523(a)(6). *Id.* at 136.

23        The Ninth Circuit Court of Appeals first faced the issue in *Petralia v. Jercich (In*

24   *re Jercich)*, 238 F.3d 1202 (9ᵗʰ Cir. 2001). In that case, an employer chose not to pay his

25   employee and instead used the money for personal investments. A state court held that

26   the employer's conduct was "willful and oppressive" under California Civil Code § 3294.

27   *Id.* at 1204. The bankruptcy court ruled against the employee in his dischargeability

28   complaint under § 523(a)(6) and the BAP affirmed.

11

1    The Ninth Circuit reversed, holding that, under § 523(a)(6), it must be shown that

2    the debtor inflicted the injury willfully and maliciously rather than recklessly or

3    negligently. *Id.* at 1207. "[U]nder *Geiger*, the willful injury requirement of § 523(a)(6)

4    is met when it is shown either that the debtor had a subjective motive to inflict the injury

5    *or* that the debtor believed that the injury was substantially certain to occur as a result of

6    his conduct." *Id.* at 1208 (emphasis in original). The state court had found that the

7    employer knew he owed the wages to his employee and that injury was substantially

8    certain if the wages were not paid. The employer had the ability to pay and chose not to

9    pay. An act is malicious within the meaning of § 523(a)(6), where it is (1) a wrongful act,

10   (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just

11   cause or excuse. *Id.* at 1209.

12       *In re Jercich* should be read narrowly in light of the court's subsequent decision in

13   *Lockerby v. Sierra,* 535 F.3d 1038 (C.A.9 (Ariz.) 2008), where it held that, "an intentional

14   breach of contract cannot give rise to non-dischargeability under § 523(a)(6) unless it is

15   accompanied by conduct that constitutes a tort under state law." *Id.* at 1040. In

16   *Lockerby*, an attorney and his client settled a malpractice suit and the attorney decided to

17   breach that agreement by not paying the former client as had been agreed. The

18   bankruptcy court, affirmed by the district court, decided the debt was nondischargeable

19   under § 523(a)(6) because "Sierra possessed the 'subjective intent of harming

20   Lockerby.'" *Id.* The Ninth Circuit reversed that decision and held that the debt was not

21   excepted from the attorney's discharge. Following *Kawaauhau,* the court held that

22   "'[i]ntentional torts generally require that the actor intend 'the consequences of an act,'

23   not simply 'the act itself . . . .'" *Id.* at 1041 (internal citations omitted). The court went

24   on to explain that the Supreme Court, in *Kawaauhau,* "specifically rejected the notion that

25   a 'knowing breach of contract' could trigger exception from discharge under

26   § 523(a)(6)."

27       The Narangs contend that Biswas "willfully and maliciously made

28   misrepresentations" that he was qualified to competently construct the Narangs' house.

12

Did Biswas act with intent to injure the Narangs?  Did he believe that injury was substantially certain to occur as a result of his conduct?  The Narangs did not any produce evidence to support a finding that Biswas acted willfully with intent to cause them any injury.

**Conclusion.**

While clearly Biswas failed dismally to perform under the Construction Contract, the court is persuaded that the Narangs' damages were the result of incompetence and negligence, not fraud or willful intent to cause injury.  No evidence was presented to show that Biswas actually knew he was not competent to perform the Construction Contract or intended to deceive the Narangs.  Biswas' violation of the California Business and Professions Code, by temporarily failing to maintain his contractor's license, does not constitute fraud under the Bankruptcy Code.  Finally, no evidence was presented to show that Biswas willfully and intentionally injured the Narangs.  Judgment will be entered in favor of Biswas.

Dated: February _18_, 2009

W. Richard Lee
United States Bankruptcy Judge

13